IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| JOHN C. BOLAND, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-21-2579 |
| AMAZON.COM SALES, INC., | * | |
| Defendant. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Author and publisher John C. Boland brought this action *pro se* seeking damages and injunctive relief against Amazon.com Sales, Inc. ("Amazon") for various breach of contract, copyright, fraud, and unjust enrichment claims stemming from an alleged conspiracy between Amazon and third-party sellers who he claims have posted fraudulent sales listings for his copyrighted works on Amazon's platform. (*See* Am. Compl., ECF No. 24-1.) Presently pending before the Court is Amazon's Motion to Compel Arbitration and Dismiss this action (ECF No. 29). After the Motion was fully briefed, Mr. Boland filed two Motions for Leave to File a Surreply, both of which are also presently pending (ECF Nos. 33, 34). No hearing is required to resolve these Motions. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth in this Memorandum, a separate Order shall issue granting both of Mr. Boland's Motions for Leave to File a Surreply and granting Amazon's Motion to Compel Arbitration and Dismiss.

## I. Factual and Procedural Background

John C. Boland is a novelist and the owner of a business, Perfect Crime Books, through which he publishes his own and other authors' works. (*See generally* Compl. Ex. 1, ECF No. 2.)

1

On July 5, 2011, Mr. Boland created an account on Amazon's online Kindle Direct Publishing ("KDP") platform, which "gives independent authors and publishers the ability to self-publish" physical and electronic copies of their works. (Decl. of Rebecca Hartley ¶ 2, Mot. Compel and Dismiss, ECF No. 29-3.) In order to create a KDP account, Mr. Boland, like all KDP users, was required to accept the platform's Terms and Conditions ("KDP Terms" or "Terms"), which he did by clicking a button to "Agree" when the Terms were presented to him on the webpage. (*Id.* ¶ 4.) When Mr. Boland first agreed to the KDP Terms, they did not contain an arbitration agreement, but they did contain a provision stating that Amazon "reserve[d] the right to change the terms" and would notify users of changes either via email or by publication online. (*Id.* Ex. C.) Amazon added an arbitration provision to the KDP Terms on September 18, 2012. (*Id.* ¶ 5.) Mr. Boland has since published dozens[1] of titles through KDP, and each time "he was presented with the then-present current terms—containing the arbitration provision—and clicked to agree[.]" (*Id.* ¶ 7.)

The arbitration provision states: "Any dispute or claim **relating in any way to this Agreement or KDP** will be resolved by binding arbitration, rather than in court[.]" (*Id.* Ex. A, § 10.1 (emphasis added).) It specifies that the American Arbitration Association ("AAA") will conduct all such arbitration "under its commercial rules." (*Id.*) These rules (the "AAA rules") state that "[t]he arbitrator shall have the power to rule on . . . any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim," as well as "the power to determine the existence or validity of a contract of which an arbitration clause forms a part." (Mot. Compel and Dismiss Ex. A, § R-7(a)–(b), ECF No. 29-1.)

---

[1] The parties dispute exactly how many titles Mr. Boland has published through KDP since September 18, 2012, but they agree that it was at least "about 58," and the actual number of publications is immaterial to the Court's analysis. (Second Surreply Opp'n to Mot. Compel and Dismiss, ECF No. 34-2; *see* Hartley Decl. ¶ 7, Mot. Compel and Dismiss, ECF No. 29-3.)

Mr. Boland's claims against Amazon stem from his allegation that "[s]everal [third-party] businesses . . . are engaged in a fraudulent scheme involving sale of nonexistent book editions on Amazon" in which they list "18th or 19th century edition[s] of . . . current, modern title[s] at an elevated price[.]" (Am. Compl. Ex. 2, ECF No. 24-1.) He alleges that these fraudulent sellers have listed false copies of "at least 17 book titles to which [he] owns full copyright and/or publishing rights and which Amazon was licensed by [him] to print and distribute." (Am. Compl. ¶ 1, ECF No. 24-1.) Mr. Boland first made Amazon aware of these allegations when he mailed a letter to its Legal Department on or around April 24, 2021, informing it that he had made a report to the United States Attorney's Office. (Am. Compl. Ex. 2.) On August 12, 2021, after making unsuccessful attempts to address the issue with Amazon representatives, Mr. Boland informed the company via another letter that he was preparing to file suit. (Am. Compl. Exs. 3, 4.)

On August 30, 2021, Mr. Boland brought this action *pro se* against Amazon in the Circuit Court for Baltimore City, Maryland. (ECF No. 2.) In his initial Complaint, Mr. Boland alleged several causes of action under state and federal law—including breach of contract, unjust enrichment, trademark infringement, and copyright violations—all based on the claim that Amazon had acted "willful[ly]" and "with full knowledge" to allow the fraudulent scheme to continue on its platform after Mr. Boland put the company on notice in April 2021. (*Id.* ¶ 5.) Amazon removed the action to this Court based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(a). (ECF No. 1.) In its Answer, Amazon asserted, among other affirmative defenses, that "Plaintiff's claims against Amazon are subject to mandatory arbitration pursuant to the parties' agreements." (ECF No. 7.)

This Court has since granted Mr. Boland leave to file an Amended Complaint, (*see* ECF No. 28), in which he makes claims of breach of contract; unjust enrichment; copyright, trademark,

and trade dress infringement; defamation; and fraudulent inducement as to the KDP Terms as a whole. (Am. Compl., ECF No. 24-1.) Mr. Boland seeks monetary damages for fraud, breach of contract, and defamation; statutory damages for trademark infringement pursuant to the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1117, and 1125; and an injunction to prevent Amazon from "permitting . . . sale of nonexistent or counterfeit editions" of any works to which he owns the rights. (*Id.*)

Amazon moved to compel arbitration of Mr. Boland's claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 2, and to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b), citing subsections (3) (improper venue) and (6) (failure to state a claim upon which relief can be granted). (ECF No. 29.) In support of its Motion, Amazon asserts that all of Mr. Boland's claims are subject to the parties' arbitration agreement and that, to the extent that their arbitrability is in dispute, the agreement also commits that question to an arbitrator. (*Id.*)

In response, Mr. Boland asserts that most of his claims against Amazon are "unrelated to the parties' publishing agreement" and therefore fall outside the scope of the arbitration agreement, and that his contract-related claims are not subject to arbitration because courts may hear "generally applicable contract defenses" to contracts containing arbitration agreements.[2] (ECF No. 30 (quoting *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005).) In his two subsequent surreplies, Mr. Boland further asserts that Amazon's Motion should be denied because arbitration would unfairly deny him the chance to vindicate his copyright claims in federal court in violation of the "public policy interest" in protecting copyrights, (ECF No. 33), and because

---

[2] Mr. Boland also asserts that Amazon's Motion should be denied because it "seeks to further delay Plaintiff's access to discovery." (ECF No. 30.) He provides no factual support for this allegation, and the Court does not discern any undue delay on Amazon's part.

4

some of the works at issue were published on KDP before the arbitration agreement was added to the KDP Terms. (ECF No. 34.)

## II.    Analysis

### A.    Motions for Leave to File a Surreply

As a preliminary matter, the Court will address Mr. Boland's two Motions for Leave to File a Surreply. (ECF Nos. 33, 34.) Because Mr. Boland is a *pro se* party and the arguments presented in his surreplies do not unduly prejudice Amazon, the Court will grant Mr. Boland's Motions and, accordingly, will consider the arguments contained in his surreplies in its analysis below.

### i.   Legal Standard and Analysis

Though surreplies are generally not permitted, *see* Local Rule 105.2(a), the Court in its discretion may allow a party to file a surreply. *EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013), *aff'd in part*, 778 F.3d 463 (4th Cir. 2015). This discretion is typically used in the interest of fairness to permit parties to respond to new matters raised for the first time in the opposing parties' reply briefs. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). However, courts have also used this discretion to permit *pro se* parties to file surreplies even where no new matters were raised in the reply brief. *See Williams v. Bartee*, Civ. No. CCB-10-935, 2011 WL 2842367, at \*2 (D. Md. July 14, 2011), *aff'd sub nom. Williams v. Merritt*, 469 F. App'x 270 (4th Cir. 2012) (permitting *pro se* party to file surreply that does not address new material but also does not "unduly prejudice defendants"). Courts have also permitted *pro se* parties to file surreplies where the opposing party has not objected to the filing. *See Zhang v. Sci. & Tech. Corp.*, 382 F. Supp. 2d 761, 767 (D. Md. 2005), *aff'd*, 174 F. App'x 177 (4th Cir. 2006).

Here, Amazon raised no new arguments in its reply brief; it merely reiterated the legal arguments presented in its Motion and addressed the arguments that Mr. Boland raised in his response. (ECF No. 32.) However, because Mr. Boland is a *pro se* party, and because Amazon has not objected to either of his Motions for Leave to File a Surreply, the Court is inclined to grant Mr. Boland's Motions even though they address no new arguments. Further, the Court finds that because the arguments contained in the surreplies do not change the outcome of its analysis below, Amazon is not unduly prejudiced by them. Accordingly, the Court grants Mr. Boland's Motions and considers his surreplies below.

### B. Motion to Compel Arbitration

Next, the Court must decide whether it is bound by the Federal Arbitration Act ("FAA") to compel the arbitration of Mr. Boland's claims against Amazon. Because it finds that the parties clearly and unmistakably agreed to arbitrate the arbitrability of Mr. Boland's claims, the Court must grant Amazon's Motion to Compel Arbitration.

### i. Legal Standard

The FAA provides that, in any contract involving interstate commerce,[3] a provision in which the parties agree to arbitrate their disputes shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Because FAA provisions are mandatory, courts must compel arbitration when a valid arbitration agreement exists." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001).

The "basic objective" of courts considering commercial arbitration agreements is to "ensure that [they], like other contracts, are enforced according to their terms . . . and according to the intentions of the parties"—including with respect to questions of "arbitrability," or "whether

---

[3] The parties do not dispute that their contract, which concerns the sale of print and electronic books on a global platform, involves interstate commerce.

they agreed to arbitrate the merits" of a particular claim or dispute. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947, 942 (1995) (quotations omitted). Where there is "'clear and unmistakable' evidence" that the parties' contract assigns issues of arbitrability to an arbitrator, "the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 530, 528 (2019) (quoting *First Options*, 514 U.S. at 944); *see also Simply Wireless, Inc. v. T-Mobile US, Inc.*, 877 F.3d 522, 528 (4th Cir. 2017). In other words, when the parties so agree, a court is not permitted to decide which of the parties' claims fall within the scope of their agreement to arbitrate. *Simply Wireless*, 877 F.3d at 528 (holding that "the district court erred in deciding" questions of scope). The Fourth Circuit has held that, "in the context of a commercial contract between sophisticated parties, the explicit incorporation of [arbitral rules that assign arbitrability questions to an arbitrator] serves as clear and unmistakable evidence of the parties' intent to arbitrate arbitrability." *Id.* (quotations omitted). If a party claims that the arbitration agreement *itself* is invalid under contract law, "the federal court must consider the challenge before ordering compliance," but challenges to the validity of the parties' contract *as a whole* can be delegated to an arbitrator and must be arbitrated if the parties' agreement so specifies. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010).

### ii. Analysis

The record here indicates that Mr. Boland has agreed to the KDP Terms dozens of times over the course of his business dealings with Amazon and KDP.[4] (*See* Second Surreply Opp'n to Mot. Compel and Dismiss, ECF No. 34-2.) The KDP Terms contain an arbitration provision stating that "[a]ny dispute or claim relating in any way to this Agreement or KDP will be resolved by binding arbitration, rather than in court[.]" (Hartley Decl. Ex. A § 10.1, Mot. Compel and

---

[4] Plaintiff does not dispute that his agreement to the KDP Terms constituted a contract with Amazon. (*See generally* Opp'n to Mot. Compel and Dismiss, ECF No. 30.)

Dismiss, ECF No. 29-3.) The provision specifies that the AAA will arbitrate all such disputes according to its rules, which give the arbitrator "the power to rule on . . . any objections with respect to . . . the arbitrability of any claim" and "the power to determine the existence or validity of a contract of which an arbitration clause forms a part." (Mot. Compel and Dismiss Ex. A, § R-7(a)–(b), ECF No. 29-1.)

Under these circumstances, the Court cannot address Mr. Boland's defenses to arbitrability because those questions are "clearly and unmistakably" reserved for arbitration. In *Simply Wireless, Inc. v. T-Mobile US, Inc.*, the Fourth Circuit held that a set of arbitral rules that were "substantively identical" to the AAA rules constituted "clear and unmistakable evidence of the parties' intent to arbitrate arbitrability" when they were incorporated into the parties' arbitration agreement, and that the district court had thus "erred in deciding whether [a party's] claims [fell] within the scope of" that agreement. 877 F.3d at 527–28 (quotations omitted).

This Court must respect the parties' binding agreement to arbitrate issues of arbitrability. Accordingly, it cannot and does not reach the merits of Mr. Boland's arguments that some of his claims fall outside the scope of the parties' publishing agreement, that arbitration is an improper forum for his copyright claims, and that some of his injuries occurred before he was bound to arbitrate them. All of these defenses to the arbitrability of his underlying claims must be arbitrated. Further, because Mr. Boland does not argue that the arbitration provision *itself* is fraudulent or otherwise unenforceable, both the AAA rules and Supreme Court precedent make clear that the issue of fraudulent inducement as to the KDP Terms *as a whole* must also be arbitrated. (Mot. Compel and Dismiss Ex. A, § R-7(b), ECF No. 29-1); *Rent-A-Center*, 561 U.S. at 71–72.

Because the parties contracted to arbitrate the arbitrability questions raised by Mr. Boland, the Court must grant Amazon's Motion to Compel Arbitration.

8

**C. Motion to Dismiss**

Finally, the Court turns to the issue of whether to grant Amazon's request to dismiss this action. (ECF No. 29.)  Because it finds that the parties have committed to arbitrate the questions of arbitrability presently before it, it will grant Amazon's Motion in full and dismiss the action.

**i.   Legal Standard and Analysis**

The Fourth Circuit has held that "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (citing *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).[5]

Here, the only issues presented by the parties are questions of arbitrability that are required, by binding agreement of the parties, to be arbitrated by the AAA.  Accordingly, the Court finds that dismissal is proper and will grant in full Amazon's Motion to Compel Arbitration and Dismiss.[6]

**III.   Conclusion**

For the foregoing reasons, a separate Order shall issue granting Plaintiff John C. Boland's two Motions for Leave to File a Surreply and Defendant Amazon's Motion to Compel Arbitration and Dismiss this action.  The Clerk will be directed to docket Mr. Boland's surreplies and then to close this case.

---

[5] The Court declines to address the unsettled question of which Rule 12(b) provision properly applies to a Motion to Compel Arbitration and Dismiss. *See Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (applying Rule 12(b)(3) to issue of compelling arbitration); *Schwartz v. Coleman*, 833 F.2d 310 (4th Cir. 1987) (applying Rule 12(b)(1) to the same).

[6] Mr. Boland contends that Amazon should be barred from moving for dismissal under Federal Rule of Civil Procedure 12(b)(3), improper venue, claiming that it waived this defense by not filing a motion to dismiss before removing the action and answering his complaint. (Opp'n to Mot. Compel and Dismiss ¶ 1, ECF No. 30.) Mr. Boland misinterprets the language of Rule 12(b), which provides that a Defendant *must* assert its defenses in its responsive pleading but *may also* assert them in a motion prior to pleading. Here, Amazon did timely assert its arbitration and venue defenses in its answer to the initial complaint. (*See* Answer, ECF No. 7.)

9

DATED this ____14____ day of September, 2022.

BY THE COURT:

James K. Bredar
Chief Judge